IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
---

DIAMOND ASSETS LLC,

                Plaintiff,                          OPINION AND ORDER

    v.

                                                    20-cv-534-wmc

DEVICE CYCLES LLC, E-TECH ASSET, LLC,
E-TECH ASSETS, LLC and MICHAEL SANTOS
(a/k/a Michael Urcia),

                Defendants.
---

     In this civil lawsuit, plaintiff Diamond Assets LLC accuses defendant Device Cycles LLC, its owner Michael Santos and related companies of trade dress infringement and related claims. Before the court is plaintiff's motion for preliminary injunction. (Dkt. #17.) The court effectively denied that motion by declining to hold a hearing or otherwise ruling on it, but issues this formal opinion and order explains its ruling and describes its ongoing concerns with plaintiff's claims in light of the upcoming dispositive motion deadline.

FACTS

### A. The Parties

     At least since 2014, plaintiff Diamond Assets has engaged in the business of purchasing, refurbishing and selling Apple® computing devices to schools and other organizations. Defendant Device Cycles offers Apple® and Chromebook, HP, Lenove, Acer, Asus (or in this case, by less expensive and portable computing devices competing with Apple devices whether made by Google or Samsung) trade-in services to schools,

hospitals and other large organizations. Defendant Michael Santos is the President and CEO of Device Cycles and also known as "Michael Urcia." Moreover, Santos has or had a past ownership stake in defendants E-tech Asset, LLC and E-Tech Assets, LLC.[1] Finally, although not a formally named defendant, Santos also was the owner of Alsan Marketing, LLC, a former buyer of more than $1,000,000 in refurbished computer hardware from plaintiff Diamond.

### B. Competing Videos

Sometime before September 2019, Diamond Assets allegedly created an audiovisual ("Diamond Video") to advertise its services on Diamond's website, https://diamondassets.com. Defendants purport to dispute this allegation (and other allegations about the Diamond Video) based on a lack of information, although any dispute is immaterial for the reasons described below. Diamond's website is allegedly hosted on a third-party computer located in the State of Wisconsin.

In particular, the Diamond Video emphasizes services aimed at "helping organizations capture the residual value that exists in their current Apple® fleets of equipment." (Pl.'s PFOFs (dkt. #28) ¶ 5 (citing McKenna Decl. (dkt. #19) ¶ 6).) The Diamond Video also features an audio transcript, narrated by various of Diamond's

---

[1] Plaintiff also brought suit against defendant E-Tech Asset LLC in this court for trademark and trade dress infringement under federal and state law. *Diamond Assets LLC v. E-Tech Asset LLC*, No. 18-cv-568 (W.D. Wis. July 20, 2018). Moreover, the court granted a joint motion for preliminary injunction (dkt. ##21, 22), and the parties subsequently settled that case resulting in plaintiff's claims being dismissed with prejudice (dkt. ##43, 44). Plaintiff filed a third lawsuit against Santos and E-Tech Asset LLC for breach of the settlement agreement and unfair competition under Wisconsin law. *Diamond Assets LLC v. E-Tech Asset, LLC*, No. 20-cv-969 (W.D. Wis. Dec. 21, 2020).

professional staff, including its three Business Development, Sales and Operations Vice Presidents, each of whom explain parts of Diamond's business process. Defendants do not dispute that the Diamond Video described a process, but contend that the process is not unique to Diamond. Rather, defendants respond that "it is the same process or a substantially similar process to those used by many tech device trade-in dealers." (Defs.' Resp. to Pl.'s PFOFs (dkt. #28) ¶ 6.)

The arguable uniqueness of Diamond's business process appears to go to the heart of the parties' dispute. More specifically, the Diamond Video describes a "device recovery process," including Diamond's "white glove pickup service" by an "asset recovery specialist," who is dispatched to the customer's location. The Diamond Video also advertises Diamond's receiving, tracking, and audit, grading and reconciliation processes. Although Diamond Asset provided a transcript of this Video in support of its preliminary injunction motion, defendants objected on foundation and authenticity grounds. Regardless, the court reviewed the Video and, where relevant below, will address specific language and segments of the video.

On September 23, 2019, defendant Device Cycles also posted a video on YouTube, titled "About Us/Device Cycles/Education Video." The Device Video remains available on YouTube as of the date of this opinion at https://www.youtube.com/results?search_query=device+cycles. In that Video, Device Cycles states that its services help organizations "capture [] the existing value of used Apple® and Chromebook™ devices." On September 30, 2019, Device Cycles posted the competing Video on its Facebook page, where it also remains available for viewing as of

the date of this opinion and order. Similar to the Diamond Video, the Device Video describes Device Cycles' receiving, device tracking, audit, grading and reconciliation processes. The audio script for the Device Video is narrated by Device Cycles' Account Manager and Chief Operating Officer. While plaintiff provided a transcript for this video in support of its motion as well, defendants again objected based on foundation and authenticity grounds. Because the court also reviewed this video, however, it will discuss specific language and segments as relevant below.

### C. Competing Bid Sheets

Finally, since at least September 2018, Diamond Assets has used a bid sheet as part of its bidding process. (Galster Decl., E. A (dkt. #20-1).) Defendants did not dispute that Diamond uses a bid sheet, but argued in opposition to plaintiff's preliminary injunction motion there is nothing distinctive that would make it entitled to trade dress protection.

The Diamond Bid Sheet displays Diamond's company name in the upper left corner of the first, substantive page highlighted in bright green, sans serif font. The sheet also features two columns of information below the Diamond name in black, sans serif font; with the left column providing Diamond's address and contract information, while the right column provides "Quote Number," "Quote Type," "Quote is Valid for," and customer contact information fields.



(*Id.*) The Diamond Bid Sheet also includes a table featuring a gray row of column headings and alternating white and light-green rows of information in the table with column headings, including, "Description," "Model Number, "Qty," "Value," and "Total Value."

| Description | Model Number | Qty | Value | Total Value |
|---|---|---|---|---|
| MacBook Pro 13" - Mid 2009 | MB990LL/A | 14 | | |
| iMac 21.5" - Late 2011 | MC978LL/A | 1 | | |
| iMac 21.5" - Mid 2011 | MC309LL/A | 25 | | |
| iMac 27" - Mid 2011 | MC813LL/A | 1 | | |

(*Id.*)

Device Cycles also uses a bid sheet as part of its business. The Device Bid Sheet displays Device Cycle's business name in green, sans serif font in the upper left corner of the first, substantive page. Defendants do not dispute this, but point out that a number of businesses use green font to communicate environmentally-friendly business practices. The Device Bid Sheet also contains two columns, with a left column providing Device Cycles' address and contact information, while a right column provides "Quote No.," "Quote Date," "Quote Type," "Valid Until," and customer contact information fields. In addition, the Device Bid Sheet contains a table featuring a gray row, with headings for "Description," "Model No.," "Grade," "Units," "Value," and "Total Value."

## OPINION

To show that it is entitled to a preliminary injunction, plaintiff must demonstrate (1) a likelihood of success on the merits, (2) no adequate remedy at law, and (3) irreparable harm if an injunction is not granted. *Promatek Indus., Ltd. v. Equitrac Corp.*, 300 F.3d 808, 811 (7th Cir. 2002). Should plaintiff meet this burden, the court must also consider "any irreparable harm an injunction would cause the nonmoving party," and finally, "any

5

consequences to the public from denying or granting the injunction." *Id.* The greater the likelihood of plaintiff's success on the merits, "the less the balance of harms needs to weigh in its favor." *Id.*

To meet its initial burden demonstrating a likelihood of success on the merits of these claims, plaintiff must show a "'better than negligible' chance of succeeding on the merits." *Ty, Inc. v. Jones Groups, Inc.*, 237 F.3d 891, 897 (7th Cir. 2001) (quoting *Int'l Kennel Club of Chi. v. Mighty Star, Inc.*, 846 F.2d 1079, 1084 (7th Cir. 1988)).

Specifically, in order to prevail on its Lanham Act claim, plaintiff must show that: (1) its trade dress is protectable; and (2) defendants' use of the trade dress is likely to cause confusion among consumers. *See Thomas & Betts Corp. v. Panduit Corp.*, 138 F.3d 277, 291 (7th Cir. 1998). At least for purposes of the motion for a preliminary injunction, plaintiff's claim does not get out of the starting block.

"Trade dress" refers to the "total image of a product, including size, shape, color combinations, graphics, packaging and label." *Badger Meter, Inc. v. Grinnell Corp.*, 13 F.3d 1145, 1151 (7th Cir. 1994). Thus, as a threshold requirement in proving that its trade dress is worthy of protection, plaintiff must clearly identify "the discrete elements" that make up the trade dress. *See generally* 1 J. Thomas McCarthy, *McCarthy on Trademarks & Unfair Competition* § 8.3 at 8-13 (5th ed. 2018) ("All courts agree that the elements of the alleged trade dress must be clearly listed and described.") (citing cases); *see e.g.*, *Black & Decker Corp. v. Positec USA Inc.*, No. 11-CV-5426, 2015 WL 1543262, at *26 (N.D. Ill. Mar. 31, 2015) (holding that trade dress infringement claim requires plaintiff to articulate the elements of its alleged trade dress).

6

While claiming trade dress protection in the Diamond Video's progression and script, as well as its bid sheet, plaintiff fails to describe clearly the elements of the trade dress, and likely for good reason, since the elements as best as the court can discern are either descriptive -- such as the video describing Diamond Assets' trade-in process, which appears to be standard across the industry -- or functional -- as in the case of its bid sheet. Neither of these are entitled to protection. With respect to the Video, plaintiff principally relies on elements that it contends are arbitrary: "featuring industrial shelving in bokeh[2] during the Diamond Video Progression, featuring 'upbeat light keyboard background music over a chorded baseline,' or referring to Diamond's device retrieval as 'white glove pickup service.'" (Pl.'s Opening Br. (dkt. #21) 15 (quoting Pl.'s PFOFs (dkt. #18) ¶¶ 28, 46).) With respect to the bid sheet, plaintiff relies on "colors, font, and layout," noting specifically in its complaint that: the company name is in green front; and there are two columns of information at the top "with alternating white and green rows." (*Id.* at 16; Compl. (dkt. #1) ¶¶ 67-71).) And even if it had cleared the hurdle of adequately describing discrete elements in its trade dress, plaintiff must also demonstrate that its trade dress is entitled to protection, which is nearly impossible to assess given the lack of clarity as to the essential elements of its supposedly unique trade dress.

Putting that aside, the parties agree on applying the framework adopted by the United States Supreme Court in *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763 (1992), which classifies trademarks by "categories of generally increasing distinctiveness; following

---

[2] "In photography, bokeh is the aesthetic quality of the blur produced in out-of-focus parts of an image." "Bokeh," Wikipedia, https://en.wikipedia.org/wiki/Bokeh.

7

the classic formulation set out by Judge Friendly": (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; or (5) fanciful." *Id*. at 768 (citing *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9 (2d Cir. 1976)). Generic dress is entitled to no protection; descriptive dress is "generally not protectable as trademarks," but can become protectable if the dress "acquires secondary meaning"; and suggestive, arbitrary and fanciful dress are always entitled to protection. *Mil-Mar Shoe Co., Inc. v. Shonac Corp.*, 75 F.3d 1153, 1157 (7th Cir. 1996) (alteration in original). "A generic term is one that is commonly used to name or designate a kind of goods." Id. at 1157. "Unlike a trademark, which identifies the source of a product, a generic term merely specifies the type, or genus, of thing into which common linguistic usage consigns that product." *Id.* at 1157 (quoting *Gilmix, Inc. v. JS & A Group, Inc.*, 699 F.2d 901, 905 (7th Cir. 1983)). "A descriptive mark, on the other hand, is one that merely describes the ingredients, qualities, or characteristics of an article of trade or service." *Id.* at 1157. Finally, "[s]uggestive ('Tide' laundry detergent), arbitrary ('Apple' computers), and fanciful ('Exxon' gasoline) marks collectively are distinctive in the sense that secondary meaning is likely to develop, as a result of which any duplicate use of the name is likely to breed confusion about the product's source." *Bliss Salon Day Spa v. Bliss World LLC*, 268 F.3d 494, 496-97 (7th Cir. 2001).

Here, plaintiff contends that the Diamond Video "require[s] the observer to use imagination and perception to determine the nature of Diamond's services, if the nature is even discernable at all." (Pl.'s Opening Br. (dkt. #21) 15.) This argument borders on the silly since even considered as a whole, the Diamond Video merely describes Diamond Assets' process for providing its customers with a buyback or trade-in services for tech

8

devices.  Specifically, as detailed in plaintiff's proposed findings, Diamond Assets' executives introduce the company and its mission and then describe a "pretty simple" process, entailing Diamond sending in its "own guys" with "white glove pickup services" to recover assets.  (Pl.'s PFOFs (dkt. #18) ¶ 27.)  On site, Diamond further "tags" each device, packs them in "our specialized boxes," and "ships them." (*Id.*)  Afterward, through an audit, each device is assigned "a grade, based on cosmetic wear, tear, any kind of issues that is with the device," which is next "packaged in consumer ready packaging," placed on pallets and transported to Diamond Assets' warehouse," where they are eventually "sold wholesale to end users." (*Id.*)  Finally, after this step is complete, Diamond Assets produces a "reconciliation report," capturing each device, which it shares with the customer and reviews in a follow-up call. (*Id.*)

At least as pleaded, therefore, nothing about the Diamond Video obviously supports plaintiff's contention that it is suggestive, arbitrary or fanciful.  Instead, the video would seem to be plainly descriptive.  Nonetheless, plaintiff argues that the video is arbitrary, pointing to three elements, "industrial shelving in bokeh during the "Diamond Video Progression," upbeat light keyboard background music over a chorded baseline, and referring to Diamond's retrieval service as "white glove pickup service." (Pl.'s Opening Br. (dkt. #21) 15 (internal citations and quotation marks omitted).  However, trade dress is the "total image of a product," *Badger Meter, Inc.*, 13 F.3d at 1151, and these three aspects of the video do *not* seem to capture the *total* image of the Diamond Video, even if each aspect, in isolation, could be deemed inherently distinctive.  On the record presented by plaintiff in support of its preliminary injunction motion, therefore, the court is not

9

convinced or, at minimum, plaintiff failed to demonstrate that it is likely to succeed in proving that the video is entitled to trade dress protection.

As for Diamond's bid sheet, as plaintiff recognizes, trade dress protection does not extend to something that is merely functional. *See Arlington Specialties, Inc. v. Urban Aid, Inc.*, 847 F.3d 415, 418 (7th Cir. 2017) (explaining that "a critical limit on trade dress rights" is embodied in the "doctrine of functionality"); *see also TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 34 (2001) ( "the Lanham Act does not exist to reward manufacturers for their innovation in creating a particular device; that is the purpose of patent law and its period of exclusivity").  Thus, plaintiff has the burden to demonstrate that its trade dress is not "functional." *See* 15 U.S.C. § 1125(a)(3) ("In a civil action for trade dress infringement under this chapter for trade dress not registered on the principal register, the person who asserts trade dress protection has the burden of proving that the matter sought to be protected is not functional.").  In light of this restriction, plaintiff acknowledges that its bid sheet's trade dress is limited to its "colors, font, and layout," none of which are "essential to the use of purpose of" Diamond Assets' services.  (Pl.'s Opening Br. (dkt. #21) 14 (quoting *TrafFix Devices*, 532 U.S. at 32).)

Moreover, by disclaiming any functional elements, the bid sheet's trade dress  is reduced to "product design and color," which, as plaintiff acknowledges, "can never be inherently distinctive on its own, but instead can only obtain distinctive status after secondary meaning has been shown." (Pl.'s Opening Br. (dkt. #21) 13 (citing *Wal-Mart Stores, Inc. v. Samara Brothers, Inc.*, 529 U.S. 205, 211-12 (2000); *Qualitex Co. v. Jacobson Prods., Co.*, 514 U.S. 159, 162-63 (1995)).)  Because the bid sheet's trade dress is not

inherently distinctive, therefore, the court finds that plaintiff has failed to present any evidence demonstrating that its trade dress has taken on any secondary meaning. Finally, in its opposition, defendant points to other providers in this industry that use green (a color commonly used to depict environmental products or services), calling into question if plaintiff could ever meet this burden. (Defs.' Opp'n (dkt. #27) 20.)

Accordingly, as plaintiff appears to acknowledge in essentially dropping any argument with respect to the bid sheet in its reply brief in support of a preliminary judgment, plaintiff has failed to demonstrate that it has a likelihood of succeeding in demonstrating that either its video or bid sheet is entitled to trade dress protection.

ORDER

IT IS ORDERED that plaintiff Diamond Assets LLC's motion for preliminary injunction (dkt. #17) is DENIED.

Entered this 11th day of April, 2022.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge